1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF WASHINGTON
Seattle Division

8

9

HEXACTA, INC.,
624 Fourth Avenue, Suite 205
Kirkland, WA 98033, and

10

11

12

JOSE JAVIER LOPEZ DE LAGAR, and
FLAVIA PAOLA SOSA, husband and wife, and
J.L., D.L., and I.L., minor children
5958 155th Avenue SE
Bellevue, WA 98006

13

Plaintiffs,

v.

14

15

16

Kathy A. BARAN, in her Official Capacity,
Director of the California Service Center, U.S.
Citizenship and Immigration Services, U.S.
Department of Homeland Security;

17

18

L. Francis CISSNA, in his Official Capacity,
Director, U.S. Citizenship and Immigration
Services, U.S. Department of Homeland
Security;

19

20

Kevin MCALEENAN, in his Official Capacity,
Acting Secretary, U.S. Department of Homeland
Security;

21

22

23

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, Office of the
Chief Counsel, 20 Massachusetts Ave. N.W.,
Room 4210, Washington, D.C.  20529; and

24

25

26

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, Office of the
General Counsel, 245 Murray Lane SW, Mail
Stop 0485, Washington, D.C., 20528-0485.

Defendants.

27

No.

**CIVIL COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND
REVIEW OF AGENCY ACTION
UNDER THE
ADMINISTRATIVE
PROCEDURE ACT**

**Immigration Case, Administrative
Procedure Act Case**

**No Request for Jury Trial**

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.     INTRODUCTION

1.      Plaintiffs bring this action to challenge an immigration denial that pulls the rug out from under their U.S. operations, dealing a harsh blow to relations and agreements with U.S. customers.  Here, the immigration agencies - USCIS and its California Service Center - arbitrarily reversed a prior determination that plaintiff Lopez de Lagar qualified as an "executive," and thereby denied his petition for a visa extension.  Because the agency actions were arbitrary and capricious, without legal or factual basis, and because they will cause irreparable harm to Mr. Lopez de Lagar and his family and to plaintiff Hexacta, Inc., the company for which he works, plaintiffs are entitled to equitable relief from this Court.

2.      Plaintiffs, Hexacta, Inc., a U.S. corporation (Hexacta-US), and Jose Javier Lopez de Lagar, the Partner in charge of the Hexacta office in the Seattle area, a citizen of Argentina, bring this action for wrongful denial of the petition to extend Mr. Lopez de Lagar's immigration status, and that of his family.  Plaintiffs bring this action pursuant to Section 10b of the Administrative Procedure Act, 5 U.S.C. § 702, *et. seq.*, seeking to hold unlawful and set aside the decision of United States Citizenship and Immigration Services (USCIS) and of the Director of the California Service Center (CSC or the Director) dated March 11, 2019, denying the Form I-129 Petition for Nonimmigrant Worker, otherwise known as an L-1A petition, that Hexacta-US filed on behalf of Mr. Lopez de Lagar, and denying the Form I-539 Application to Extend/Change Nonimmigrant Status, otherwise known as an L-2 application, that Flavia Paola Sosa on behalf of herself and her and Mr. Lopez de Lagar's daughters.

3.      In 2017, Hexacta-US successfully petitioned USCIS for Mr. Lopez de Lagar to launch and head the U.S. subsidiary office of the parent company, Hexacta S.A. in Argentina, qualifying as an intracompany transferee "executive."  In January 2018, Mr. Lopez de Lagar and his wife Flavia Paola Sosa and their three young daughters relocated to the United States. Mr. Lopez de Lagar set up and began running the U.S. office, hired U.S. employees, and the business grew.  At the end of 2018, the company petitioned for an extension.  In March 2019, USCIS denied Hexacta's extension petition, deciding he was not an executive or manager.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 2

4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Mr. Lopez de Lagar now is facing the imminent loss of lawful immigration status, and facing detention and removal based on the arbitrary and capricious denial of the petition to extend his L-1A status and the family's L-2 status.  Hexacta-US is facing the loss of the head of their U.S. operations and potential inability to effectively serve their U.S. customers or fulfill long-term contracts.

4.     In reversing course, denying the I-129 petition to extend the L-1A, Defendants assert a sole ground, that Mr. Lopez de Lagar no longer qualified as an executive or manager. The denial is arbitrary and capricious, not supported by substantial evidence in the record, is contrary to established legal precedents, and constitutes an abuse of discretion.

5.     Because Plaintiffs are highly likely to succeed on the merits, but now face irreparable harm, they are entitled to temporary and preliminary injunctive relief.

6.     This action asks the Court to hold unlawful and set aside the denial of the extension of L-1A status requested on behalf of Mr. Lopez de Lagar, as well as the denial of the application to extend the L-2 status of his wife and three daughters (Mr. Lopez de Lagar and his wife and children are sometimes collectively referred to herein as the "Lopez de Lagar family").

7.     This action further asks the Court to issue a temporary restraining order and preliminary injunction reverting to the *status quo* and postponing the effectiveness of the above denials to prevent irreparable harm to Hexacta and the Lopez de Lagar family.  The improper denials leave the Lopez de Lagar family without lawful immigration status in the United States, subjecting them to detention and removal and a 3-year bar to reentry if they accrue unlawful presence exceeding 180 days.  The L-1 denial also prevents Mr. Lopez de Lagar from continuing to direct the activities for Hexacta-US in the United States on major projects that are critical to Hexacta's business operations.

8.     The Executive branch must comply with the law.  In this case, it has failed to do so.  USCIS' unlawful denials risk stripping Hexacta of an essential, highly-qualified employee in the middle of work on extremely important projects for the organization, and jeopardize the

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 3

4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

U.S. employees of the company.  The denials also threaten to force Mr. Lopez de Lagar to uproot his family or face detention for remaining in the country and defending against the wrongful denial.

## II.     PLAINTIFFS

9.       Plaintiff Hexacta-US is a subsidiary of a multinational corporation, headquartered in Argentina with over 500 employees across five countries (Argentina, Uruguay, Brazil, Colombia, and the United States).  The parent company in Argentina is Hexacta S.A.  Hexacta offers customized software solutions, including user experience and design and information architecture.  The majority of Hexacta's revenue is derived from U.S. customers.  More information about Hexacta can be found on its website at www.Hexacta.com.

10.      Plaintiff Jose Javier Lopez de Lagar is a native and citizen of Argentina who has been lawfully employed by Hexacta-US pursuant to an L-1A petition approved by USCIS for the period from January 8, 2018 to January 7, 2019, and during the time the extension of stay was pending.

11.      Plaintiff Flavia Paola Sosa is the dependent spouse of Mr. Lopez de Lagar who accompanied him to the United States in L-2 status, along with the couple's daughters, J.L, who is 12 years old, and twins, I.L. and D.L, who are 9 years old, and also applied to extend their stay.

## III.     DEFENDANTS

12.      Defendant U.S. Citizenship and Immigration Services (USCIS) is an agency of the Department of Homeland Security and is responsible for overseeing the adjudication of immigration benefits.

13.      Defendant U.S. Department of Homeland Security (DHS) is a cabinet department of the U.S. federal government responsible for immigration-related services, enforcement, and investigations.  DHS oversees USCIS and its implementation of federal law and policy with respect to immigration benefit applications.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 4

4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

14.     Defendant Kathy A. Baran is the director of the USCIS California Service Center (CSC), and she signed the denials at issue in this case.  Defendant Baran is sued in her individual capacity.

15.     Defendant L. Francis Cissna is the Director of USCIS, and he is responsible for USCIS' policies, practices, and procedures, and oversees the USCIS officer responsible for making the decisions at issue in this case.  Defendant Cissna is sued in his official capacity.

16.     Defendant Kevin McAleenan is the Acting Secretary of the DHS, the department encompassing USCIS which is responsible for administration and enforcement of the immigration and nationality laws of the United States.  Defendant McAleenan is sued in his individual capacity.

## IV.     JURISDICTION

17.     This case arises under the Immigration and Nationality Act (INA) § 101, 8 U.S.C. § 1101, *et. seq*., and the Adminitrative Procedure Act, 5 U.S.C. § 701, *et. seq*.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States.  This Court also has the authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702, and 28 U.S.C. §§ 1361-62.  The United States has waived sovereign immunity under 5 U.S.C. § 702.

18.     USCIS' decision to deny Plaintiffs' immigration petition is a final agency decision ripe for judicial review, and Plaintiffs need not have sought an appeal before USCIS' Administrative Appeals Office (AAO) before invoking the jurisdiction of this Court.  *See, e.g.*, *Young v. Reno*, 114 F.3d 879 (9th Cir. 1997).

## V.     STANDING

19.     Hexacta-US has standing to bring this action as the petitioner of the L-1A petition that USCIS erroneously denied. 5 U.S.C. § 702.

20.     Mr. Lopez de Lagar has standing and a legally protected interest as the beneficiary of the L-1A petition who suffered legal wrong because of agency action.  5 U.S.C. § 702.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 5
4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

21.     The Lopez de Lagar family also have standing based on the denial of their applications for extension of their L-2 status, which was the direct result of the denial of Hexacta's L-1A petition.  5 U.S.C. § 702.

## VI.    VENUE

22.     Pursuant to 28 U.S.C. 1391(e) and 5 U.S.C. § 703, venue is properly with this Court because (1) this is a civil action in which the Defendants are employees or officers of the United States, acting in their official capacity, and an agency of the United States; (2) Plaintiff Hexacta-US has its head office in Kirkland, Washington, and conducts business in the Western District of Washington; (3) the Lopez de Lagar family Plaintiffs reside in Bellevue, Washington; (4) a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Washington; and (5) there is no real property involved in this action.

## VII.    LEGAL BACKGROUND

23.     In 1970, Congress created the L visa classification for multinational firms to "eliminate problems . . . faced by American companies having offices abroad in transferring key personnel freely within the organization."  See generally H.R. Rep. No. 91-851, § 1(b), at 5 (1970), as reprinted in 1970 U.S.C.C.A.N. 2750, 2754.

24.     The L-1A immigration classification allows a U.S. entity to transfer a foreign national employee from a related entity abroad temporarily to work for the U.S. entity in a managerial or executive capacity.  INA § 101(a)(15)(L); 8 U.S.C. § 1101(a)(15)(L).  The L-1 beneficiary is referred to as an "intracompany transferee."  The employee must have worked for at least one year continuously in the preceding three years for the related foreign entity.  Id.  The agency promulgated regulations to implement the statutory provisions.  See 8 C.F.R. § 214.2(l) (1989).

25.     An L-1 "new office" is "an organization which has been doing business in the United States through a parent, branch, affiliate, or subsidiary for less than one year."  8 C.F.R. § 214.2(l)(1)(ii)(F).  A petition filed on behalf of a foreign national seeking to open or to be employed in such office "may be approved for a period not to exceed one year."  Id. §

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

214.2(l)(7)(i)(A)(3).  L-1 status may be extended by filing a new Form I-129, accompanied by evidence including financial status, staffing, and a statement of the duties performed by the beneficiary for the previous year and the duties the beneficiary will perform under the extended petition.  Id. §  214.2(l)(14)(ii)(B).

26.     The statute defines "executive capacity" as follows:

(B) The term "executive capacity" means an assignment within an organization in which the employee primarily—

    **(i)**    directs the management of the organization or a major component or function of the organization;

    **(ii)**    establishes the goals and policies of the organization, component, or function;

    **(iii)**    exercises wide latitude in discretionary decision-making; and

    **(iv)**    receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

INA §  101(a)(44)(B); 8 U.S.C. §  1101(a)(44)(B).

27.     The statute defines "managerial capacity" as follows:

(A) The term "managerial capacity" means an assignment within an organization in which the employee primarily—

    **(i)**    manages the organization, or a department, subdivision, function, or component of the organization;

    **(ii)**    supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;

    **(iii)**    if another employee or other employees are directly supervised, has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) or, if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and

    **(iv)**    exercises discretion over the day-to-day operations of the activity or function for which the employee has authority..

INA § 101(a)(44)(A); 8 U.S.C. § 1101(a)(44)(A).

28.     The petitioner must establish that the executive or manager will primarily direct or manage the U.S. entity rather than perform the day-to-day functions.  Matter of Z-A-, Inc.,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Adopted Decision 2016-02 (AAO Apr. 14, 2016).[1]  An L-1A executive or manager may rely on support staff in a related entity abroad.  *Id.*

29.     If staffing levels are used as a factor in determining whether an individual is acting in a managerial or executive capacity, USCIS must consider the reasonable needs of the organization, component, or function, in light of the overall purpose and stage of development of the organization, component, or function.  8 U.S.C. § 1101(a)(44)(C).

30.     Under immigration employment authorization regulations, certain nonimmigrant classifications, including L-1, are automatically permitted to continue employment with the same employer after the petition expiration date, based on the timely filing of an extension of stay, not to exceed 240 days beginning on the expiry date of the authorized period of stay.  8 C.F.R. §§274a.12(b)(12), 274a.12(b)(20).  This is referred to as the "240 day rule".

31.     Any alien who was unlawfully present in the United States for a period of more than 180 days but less than one year, and then departed, is inadmissible if he again seeks admission within the three years of the departure or removal, and, after unlawful presence for one year or more, is inadmissible for 10 years after departure.  8 U.S.C. § 1182(a)(9)(B).

## VIII.   FACTUAL BACKGROUND

32.     Hexacta-US is a technology company engaged in custom software solutions, user experience/user interface design, and quality testing, among other related activities. Exhibit C at 246-251.  It is the wholly owned subsidiary of its parent company, Hexacta S.A. in Argentina.  Exhibit A at 36.  In June 2017, Hexacta S.A. decided to establish the U.S. office in the Seattle area in order to better serve its U.S. customer base.  *See, e.g.,* Exhibit A at 37, 40, 48-49, 56, 175-176.[2]

33.     Hexacta entrusted Mr. Lopez de Lagar to lead the U.S. office because he was the most qualified person within the organization to carry out the launching the subsidiary in such a

---

[1] Matter of Z-A-, Inc., Adopted Decision 2016-02 (AAO Apr. 14, 2016), is attached hereto as Exhibit F.
[2] All Exhibits hereto were filed in connection with the L-1A petition that USCIS denied (Case No. WAC-19-065-50824) and the L-2 application that USCIS denied (Case No. WAC-19-065-50865) therefore are part of the administrative record.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

key market.  Exhibit A at 37.  Hexacta-US filed a new office L-1A petition on behalf of Mr. Lopez de Lagar on August 21, 2017 (WAC-17-227-51160.)   USCIS approved the petition for the period January 8, 2018 to January 7, 2019.  Exhibit A at 14.

34.     Mr. Lopez de Lagar obtained his visa and arrived in the United States in L-1A status on January 12, 2018, and his wife and daughters accompanied him in L-2 status. Exhibit A at 110, 328, 331, 334.

35.     Mr. Lopez de Lagar has worked for Hexacta continuously since the company's inception.  Exhibit A at 43.  He holds the senior executive position of "Partner."  Exhibit A at 37.  He began his employment with Hexacta S.A. in Argentina in May 2000, and rose through the company to hold his first executive role as Director, Management Team, in January 2009, until his transfer to the United States in valid L-1A status in 2018.  Exhibit A at 43-46.

36.     Upon arrival in the Seattle area in January 2018, Mr. Lopez de Lagar settled his family, located and furnished the family's residence, and arranged for his daughters' education. On the company's behalf, he devoted his time to incorporating the company, procuring a sublease, setting up banking, accounting, and tax systems, as well as payroll and human resources processes, and established the strategic goals.  *See* Exhibit A at 181-190, 305-307. Revenue flow commenced in July 2018.  Exhibit C at 236-245.

37.     In July 2018, Mr. Lopez de Lagar hired the first U.S. employee, Luciana Zurlo, the Technical Manager.  Exhibits A at 231; C at 45, 93-97.  In October 2018, he hired a Business Development Manager, Julie Moynihan, initially on a part-time basis, expanding her position to full-time soon thereafter, in November 2018.  Exhibits A at 230; C at 98-103.

38.     Mr. Lopez de Lagar functions primarily, if not entirely, as an executive overseeing the operations and the personnel who advance Hexacta's core activities; he performs few if any tasks that are not supervisory, managerial, or executive in nature.  *See* Exhibit C at 23-33.

39.     Currently, administrative, marketing, and technical personnel at the headquarters in Argentina support the U.S. operations and relieve Mr. Lopez de Lagar of those tasks.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Approximately 90 people in Argentina help support the U.S. personnel and activities.  Exhibit C at 22-23, 61-92, 107-116.

40.     During the first year of operation, Hexacta's U.S. business expanded, and U.S. customers entered into additional agreements for expanded services from Hexacta-US. Mr. Lopez de Lagar made plans to hire more U.S. staff.  Exhibit C at 21-22, 35-58, 118-124.

41.     On December 7, 2018, Hexacta-US filed an I-129 petition requesting a two-year extension of Mr. Lopez de Lagar's L-1A status until January 7, 2021.  Exhibit A at 26. Hexacta paid a premium fee to USCIS of $1,410.00 for fifteen-day "premium processing." Exhibit A at 313-316.  Mr. Lopez de Lagar's wife concurrently filed a Form I-539, Application to Extend/Change Nonimmigrant Status to extend her L-2 derivative status and the L-2 status of their daughters.  Exhibit A at 311-360.  Copies of the I-129 petition, I-539 application, supporting letter from Hexacta, and supporting documents in their entirety are attached as Exhibit A.

42.     On December 21, 2018, USCIS issued a Request for Evidence ("RFE") requesting Hexacta-US to provide additional information and documents to show that Mr. Lopez de Lagar would continue to work in a primarily executive capacity, to provide additional evidence of the staffing of the U.S. operation, and to provide additional evidence of the financial status of the U.S. entity.  Exhibit B.

43.     Hexacta-US responded to the RFE, with all of the information and documents requested, on February 25, 2019. A copy of the RFE response in its entirety is attached as Exhibit C.  The documentation totaled over 180 pages and included (1) evidence of expansion of the U.S. activities under Mr. Lopez de Lagar, (2) examples of Mr. Lopez' daily calendar activities; (3) invoices and agreements for expanded work orders with several U.S. customers; (4) organizational charts showing staffing support in the U.S. and  in Argentina, as well as resumes and job descriptions of support staff; (5) communications regarding Mr. Lopez de Lagar's directing the staff who were involved in hands-on administrative, managerial, technical

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 10
4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

customer support, business development and recruiting activities; and (6) tax returns and

budgeting and finance documents.

44.     USCIS, acting through Kathy A. Baran as Director of CSC, denied the petition

on March 11, 2019, on the sole ground that Mr. Lopez de Lagar was "NOT A MANAGER OR

EXECUTIVE IN THE UNITED STATES [emphasis in original]."  Exhibit D at 1.[3]

45.     Neither Hexacta nor the Lopez de Lagar family received any notice regarding

the outcome of their I-539 extension application, but the USCIS online status information

shows that it was "denied" on March 11, 2019.  Exhibit E.

## STATEMENT OF CLAIMS

### IX.     COUNT ONE
(on behalf of plaintiffs Hexacta, Inc. and Jose Javier Lopez de Lagar),
**Violation of the Administrative Procedure Act
5 U.S.C. 701, et seq., and
Violation of the Immigration and Nationality Act,
§ 101(a), et seq., and
its Implementing Regulations,
8 C.F.R. § 214.2(l), et seq.**

**A.     Arbitrary, Capricious Finding, not in Accordance with the Law, that
Mr. Lopez de Lagar is not an Executive or Manager**

46.     Plaintiffs re-allege and incorporate herein by reference, as if fully set forth

herein, all the allegations set forth above.

47.     The Administrative Procedure Act (APA) empowers this Court to hold unlawful

and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

48.     "While judicial review of agency decisions is highly deferential, it is not without

teeth."  *Raj & Co. v. U.S. Citizenship & Immigration Servs.*, 85 F. Supp. 3d 1241, 1248 (W.D.

Wash. 2015).  "The scope of review under the 'arbitrary and capricious' standard is narrow and

a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of*

*U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443

---

[3] Although the denial is dated March 11, 2019, neither Plaintiffs nor counsel received it until March 21, 2019.
Exhibit D at 1.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(1983). However, the APA empowers courts to "strike down an agency action as arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or if the agency's decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 878 F.3d 725, 732 (9th Cir. 2017) (quoting Motor Vehicle Mfrs., 463 U.S. at 43).

49.     USCIS' decision dated March 11, 2019, denying Hexacta's L-1A petition ran counter to the evidence, relied on factors Congress did not intend to be considered, lacked a rational explanation, was implausible, and was arbitrary, capricious, an abuse of discretion, and not in accordance with law.  USCIS had approved Hexacta's initial L-1A petition, for Mr. Lopez de Lagar to begin serving in an executive capacity in January 2018, then suddenly denied Hexacta's petition to extend his L-1A petition for the same position, after Mr. Lopez de Lagar took on even more executive duties.  *See* Exhibit A at 2-3, 36-46.

50.     In denying Plaintiff's immigration petition, USCIS failed to consider and weigh the evidence in context and as a whole as required under agency precedent. *See Matter of Z-A-*, Adopted Decision 2016-02 at *4 (AAO April 14, 2016) (when determining whether a beneficiary's job duties will be primarily managerial, USCIS "must" consider the "totality of the record and weigh all relevant factors").

51.     USCIS asserted that "the description of the duties of the beneficiary's position is general and does not allow a determination of what the beneficiary does on a daily basis." Exhibit D at 3.

52.     The description of Mr. Lopez de Lagar's duties cannot plausibly be described as "general."  In response to the RFE, Hexacta-US had submitted an extremely detailed eitght-page statement of Mr. Lopez de Lagar's job duties, including the percentage of time devoted to each, which USCIS failed to even mention in the denial.  The duties described Mr. Lopez de

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Lagar's (identified as "Javier's") development of high-level strategy and execution of decision making authority, as follows:

| Executive Responsibility | Percentage of Time |
| --- | --- |
| Identify potential sales opportunities and define and execute strategies to gain access to decision makers with prospective clients.  Pursue and execute partnerships with third parties to gain access to clients and review the company's sales pipeline, providing guidance to refine the sales process and close engagements as needed.<br><br>Some of the actions taken in 2018:<br><br>- Javier oversaw all sales efforts executed by Julie Moynihan (U.S.) and Nancy Médica (Argentina) to find new "leads" potentially interested in Hexacta services. Once the potential client was contacted, Javier became involved in the process interacting with decision makers and closing deals (calls, emails, meetings). Some of the new engagement with new clients in 2018 were: Equinauts LLC, VulcanSearch, TransACT Communications.<br><br>- Throughout 2018, Javier (together with Julie Moynihan and Nancy Medica) also approached other possible clients: DealerOn, Fulcrum Technologies, Inlet Digital, Apogee, Holland America Lines, Salesforce, etc. In some cases, the proposals presented to these prospects start with a remote team working from Argentina but the plan is to assign local people working from the U.S. as well.<br><br>- Javier explored new opportunities with our current clients (from Hexacta Argentina) in order to assign and hire local resources in the U.S. (developers, tech managers) acting as a "liaison" with remote teams working from Argentina. He started this new line of business with our most important client: CreditOne Bank NA assigning Luciana Zurlo from Las Vegas, NV, and then he started discussing the same approach with CorVel and Nearpod<br><br>- He worked closely with our current nearshore staffing Partners in the U.S. (including AltaSource Group) and Javier was responsible for managing the strategic relationship with Hexacta. He identified business opportunities and led efforts for presenting proposals together with our partners, including CBS, Russell Investments, HBO.<br><br>- Javier evaluated and discussed new partnerships with strategic companies all around the U.S. looking to expand our services and | 25% |

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

| | |
|---|---|
| presence in the country, including Strong-bridge Envision, Fortress Consulting Group, TeamFound, etc.<br><br>- Javier led the redesign of our sales process at Hexacta in order to include our U.S. entity in our CRM system (Sugar).<br><br>Some actions to be taken in the future:<br><br>- He will continue to lead the expansion of our U.S. presence and orchestrate all sales efforts including our U.S. and Argentina support teams. In particular, the plan for 2019 is to start relying on the support from senior managers of some of the projects looking to add new hires in Hexacta, Inc.<br><br>- Javier will continue looking for more strategic partnerships that complement our value proposition and leverage our company services.<br><br>Although initially his goal will be to continue leveraging Argentina resources in order to expand our U.S. business, he will eventually start moving some of those responsibilities to our U.S. staff as the team in Seattle grows over time. | |
| Exercise overall responsibility for achieving Hexacta's business goals and growth objectives in the United States.  Propose objectives, establish financial plans, and oversee client development.<br>[Clarification: This relates to goals and plans for 2018- a short term approach]<br><br>Some of the actions taken in 2018:<br><br>- Javier defined a revenue and expense budget for Hexacta U.S. in 2018 (which was approved by the Partner group). He later went on to supervise the inclusion of all revenue and expense streams into existing Hexacta budget control systems in order to have up to date information on which to make decisions<br><br>- Javier oversaw the activities related to the U.S. entity registration, tax filings, payroll and bookkeeping performed by Marina Rolla. He defined goals and then he followed up the progress.<br><br>- Javier analyzed the evolution of Hexacta U.S. numbers vs. budget on a monthly basis and reviewed all special developments in the monthly MIS (Management Information Systems) meeting with the rest of the Partners. He also proposed some strategic changes throughout the year according to our business needs. | 15% |

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

| | |
|---|---|
| - When there were moments of potential cash shortfalls, Javier managed to prevent any disruption to U.S. operations by soliciting a loan from Head Office (which was later repaid during the year)<br><br>- Javier oversaw client development including: 1) Equinauts: giving support to the Manager Agustín Pelliza, and also meeting with our client in Seattle several times (Michael Smith, Adrienne Huss); 2) CreditOne, mainly through the two Managers in charge: Luciana Zurlo and Tomás Henseler; 3) TransACT Communications through Agustín Pelliza and Mauro Gonzalez, Javier met with the CEO in Seattle Area (Alex Jarzebowicz); 4) CorVel, Javier managed the high level relationship with the client visiting them in Portland OR several times in 2018 (CIO Maxim Shishin and CEO Michael Combs), he gave support to the Project Manager David Wasinger.<br><br>- Javier introduced Julie Moynihan to current clients following the plan to delegate on her part of client development. He has been doing "on the job" training to Julie overseeing her interactions with our clients.<br><br>- By the end of 2018, Javier was working on our next year budget for Hexacta U.S. (2019) aligned with the goals defined in the 2018-2020 strategic plan.<br><br>Some actions to be taken in the future:<br><br>- Javier will continue leading the goals and budget plans for the U.S. market. In the future, he will start delegating these duties to the local managers and the supporting teams from Hexacta U.S.<br><br>- He will oversee the Manager and Senior Manager currently reporting to him for client development activities, making sure we provide a better service and increase our communication channels with clients.<br><br>- Every end of the year Javier will define the budget for the following year, according to our strategic plan definitions. | |
| Function at the top levels of our organizational hierarchy, and oversee key processes to identify, recruit, and supervise our continually growing U.S. support team.<br><br>Some of the actions taken in 2018:<br><br>- As one of our Partners, Javier was involved in the executive team participating on our weekly Management Meetings (Executive) taken place every Tuesday.<br><br>- Javier was responsible for guideline definitions of the whole Recruiting/Sourcing process of Hexacta, which generated an impact on | 10% |

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 15

4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

| | |
|---|---|
| the Hexacta U.S. business as well. He defined goals and high-level procedures for the work performed by our Recruiting Manager (role taken by Mariana Castro Freire until Oct/18 and then temporarily replaced by Marco Zanger until the arrival of Florencia Soto)<br><br>- He also had an important role as the Partner responsible for the "Staffing Process" where the managers were able to escalate issues to him.<br><br>- Javier followed up the hiring process of Julie Moynihan, and he performed the "partner" interview which is our final step for taking the decision to hire the candidate.<br><br>Some actions to be taken in the future:<br><br>- Javier will continue having a key role in our strategic decisions, working closely with managers that report to him to accomplish our company goals in the U.S.<br><br>- Javier will continue overseeing the Recruiting and Staffing process of the whole company, delegating on the managers as much as possible in order to have more focus on the U.S. specific initiates.<br><br>- Since some of the key initial definitions have been made, some main operational goals of the company in the U.S. have been achieved and many processes have been incorporated into the regular responsibilities of the corporation, Javier will spend much more time on U.S. recruiting in the future | |
| Drive overall strategy to mentor, train, and evaluate performance of new employees, and review and approve career roadmaps and compensation plans for his staff.<br><br>Some of the actions taken in 2018:<br><br>- Javier defined the goals and evaluated his staff during 2018, not only his direct reports located in the U.S., but also the Managers working for him from Argentina (Luciana Zurlo, Tomás Henseler, David Wasinger, Mariana Castro/Marco Zanger, Nancy Medica, Julie Moynihan, Marina Rolla)<br><br>- In general, Javier's role as a mentor and trainer for Managers involves assigning work, directing functions, and assessing capabilities, which we expect will help scale the business in the future.<br><br>- Javier had an active role in the career plan definition for the whole company, including "salary structure" definitions and wage increase guidelines. He proposed to increase salaries to our staff with good | 10% |

| | |
|---|---|
| English skills mainly because they are working for our U.S. clients, then he followed up the implementation of this policy change.<br><br>- He defined a new compensation plan for developers to be hired in our U.S. entity, and aligned salaries in each future location with rates to be billed to clients in those locations (different benefits, taxes, etc). These definitions required an understanding of the IT markets in different Cities/Sates (Portland OR, Miami FL, Las Vegas NV, Seattle, WA)<br><br>Some actions to be taken in the future:<br><br>- Javier will continue working on our compensation plans in order to be competitive in different U.S. markets and to hire good engineers.<br><br>- Javier will continue delegating more responsibilities to his Managers in order to be more focused on higher strategic decisions in the future.<br><br>- As the team grows in the U.S. and more functions are performed locally, Javier will be spending much more of his time leading and supervising local U.S. staff | |
| Design and direct the execution of our U.S. expansion, as well as build partnerships in new markets. Meet with other Partners to define key strategic initiatives for a three (3) year period, such as opening new offices, adding additional services, or redefining the value proposition for our people and clients.<br>[Clarification: this relates for plans and goals for the 2019-2021 period: a long term approach]<br><br>Some of the actions taken in 2018:<br><br>- Javier was responsible for defining the strategic plan for our growth in the U.S. market from 2018 to 2020.<br><br>- By mid-year, he shared a first draft of the plan with the rest of the Partners, and later updated it during the rest of 2018.<br><br>- In our "strategic meeting" with all the executives and managers of Hexacta, Javier was responsible for presenting to the audience the current status, goals for 2019 and the strategic business plan for the following 3 years.<br><br>- Javier improved our relationship with local U.S. Partners (including AltaSource Group and Accelerance) and he explored new partnerships with other companies.<br><br>- He actively participated on possible company acquisitions (Trans-i from Perú), and he has been exploring strategic U.S. companies for potential | 10% |

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

| | |
|---|---|
| acquisition in the future (areas of focus:  digital transformation / consultancy).<br><br>- As the Head of the U.S. office, he researched and designed our local U.S. staffing service. He adjusted our value proposition and proposal for our clients adding this new service line.<br><br>Some actions to be taken in the future:<br><br>- Javier will lead our thinking as to ways to grow and improve our company in the U.S. in the next three years. We have defined mayor steps for the short term and a midyear strategic review led by Javier will allow us to know how far we have advanced. If need be Javier should propose adjustments to our plan and ideas for improvement.<br><br>- Javier will continue to look for opportunities to grow in the U.S. via acquisition, since organic growth has been slower than initially forecasted. More concretely, we are looking into buying a 10-20 people company, focused on front-end software development and/or IT consulting, and with a good client roster that we can leverage through our deep technological knowledge and almost 20 years of expertise in software development.<br><br>- In addition to this, we are looking forward to closing at least one more partnership in the U.S. since we have seen that partnering with well-established local U.S. companies is a natural way of getting ourselves known in the IT space. We are counting on Javier to sign this new partnership. | |
| Hold independent authority to devise high-level remedial actions for identified issues and direct crisis management when required.<br><br>Some of the actions taken in 2018:<br><br>- Javier acted as the final escalation level for all of the projects under his umbrella, as soon as Project Managers required his participation on decisions to be taken regarding our staff or high-level project issues.<br><br>- Since our revenues in Hexacta Inc are still small, most of his work on this front related to issues arising from U.S. clients being served by our Argentine company. Javier, as Head of U.S., worked diligently to solve issues escalated to him. There are two categories of problems that Javier was instrumental in working out:<br><br>    o Delivery problems, if a project runs late, has quality issues (too many bugs in the code for example) or has some people problem (someone leaving the team without finishing his/her work for example). | 20% |

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 18

4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Remedial actions might include assigning temporary staff, renegotiating with the client a new deadline, or even offering some discount from our regular billing to compensate for delays or quality issues.

Most of the solutions to these problems lie in the hands of Project Managers themselves, but need Partner approval, mainly because many of them require using company resources (more staff, cash).

Javier was asked to get involved in many of these cases and handled them swiftly.

- o  Collection issues, if a client fails to make a timely payment. In 2018, Javier had to confront two such cases. The first one involved a Canadian client with an outstanding debt of $56,000. The second one, a Florida client with an unpaid balance of $87,700.

  In the first case, when all efforts by the Project Manager had failed, Javier got involved and even travelled to Victoria, BC to conclude successful collections negotiations.

  In the second case, Javier met with the CEO of the company in Seattle, but after several conversations it was clear that the client no longer had a viable business and Javier recommended that Hexacta take a loss on that engagement. The client ended up paying $10,000, but Hexacta could not collect on the rest.

Some actions to be taken in the future:

- Since Javier is one of our most senior persons in the company, and the only Partner present in the U.S., we envision that Javier will continue to play a pivotal role in solving key issues that might come up in the future.

- As a conclusion of the unfortunate experience of failing to be paid for a project well executed, Javier suggested that we reviewed our policies towards extending credit to companies with short track records. Javier will be proposing a new approval process that should limit our exposure in cases of potential clients with small revenues (mainly start-ups). We should be implementing these new guidelines throughout 2019.

| | |
|---|---|
| Oversee the budget of our Uruguay office, review the budget for staffing and recruiting efforts, and supervise the budget for the activities related to our testing effort and services. | 5% |

Some of the actions taken in 2018:

- Javier worked closely with the Recruiting Manager who defined the budget for Staffing and Recruiting Process including Salary/ Wage

| | |
|---|---|
| structure and adjustments twice a year. He reviewed those definitions and he gave feedback accordingly.<br><br>- Javier supervised the budget related to our Testing Services (performed by Marcio Zuckeran, our Manager responsible for this Line of business).<br><br>- He gave support to Matías Bergengruen (Partner of Hexacta Uruguay) in the definition of 2018 budget early in the year.<br><br>Some actions to be taken in the future:<br><br>- In 2019, Javier will fully delegate those responsibilities to other Managers in order to be more focused on the U.S. market. He will minimize as much as possible his participation on these duties. | |
| Increase Hexacta's market positioning and local presence in the United States in order to generate a better value proposal for our clients.<br>[Clarification: this relates mainly to increasing Hexacta's brand awareness in the markets that we serve, a goal that we normally achieve by leveraging marketing, PR and networking strategies]<br><br>Some of the actions taken in 2018:<br><br>- Javier has been networking in the Seattle Area and other U.S. markets in order to increase the awareness of our company.<br><br>- Nancy Médica and our marketing people were responsible for managing Javier´s LinkedIn account and setting up meetings with executives and managers of other companies looking to grow his network.<br><br>- He participated on some events and meetups in Seattle Area.<br><br>Some actions to be taken in the future:<br><br>- Our marketing people will identify some "key events" in 2019 and Javier (and Julie) will participate in them looking to increase our awareness y the U.S. market. We might plan and execute some marketing initiatives for those events.<br><br>- In 2019, we will rely on strategies that have proven successful for us in the past in order to drive traffic to our site and increase our brand awareness such as publishing technical blog posts on topics of interest to our potential clients. | 5% |

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 20

4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Exhibit C at 22-32.  The listed activities occurred in the 10-month period between April 2018, when Hexacta-US became operational, and the beginning of 2019.  There is no indication that USCIS even considered the detailed job duties describing Mr. Lopez de Lagar's executive role.

53.     Not only did Defendants disregard pertinent evidence and arguments in the record, they failed to articulate a rational connection between the record and the decision, and offered an explanation for its decision that runs counter to the evidence, that it could not be determined what Mr. Lopez de Lagar does on a daily basis.  As such, USCIS' denial is arbitrary and capricious.  *See Stellar IT Solutions, Inc. v. USCIS*, Civ. No. 18-2015 (RC), at 20-22 (D.C.D.C. Slip Op. 11/19/18) (USCIS lacked "reasonable justification" to deny H-1B petition, considering failure to acknowledge a company letter and other directly responsive evidence).[4]

**B.     Arbitrary, Capricious Assertion, not in Accordance with the Law, that Mr. Lopez de Lagar is Engaged in Hands-on Day-to-day Software Development Work**

54.     Defendants' decision demonstrates a focus on minor, irrelevant details and failure to consider the evidence as a whole and the pertinent factors, including the nature and scope of the petitioner's business; the petitioner's organizational structure, staffing levels, and the beneficiary's position within the petitioner's organization; the scope of the beneficiary's authority; the work performed by other staff within the petitioner's organization, including whether those employees relieve the beneficiary from performing operational and administrative duties; and other factors that contribute to understanding the actual duties and role in the business.

55.     Hexacta-US complied with USCIS' request for a detailed organizational breakdown of the Plaintiff's employees, wages, and the chain of command, but USCIS' decision fails to reflect that it considered the detailed evidence Hexacta provided.  *Compare* Exhibits A and C, *with* Exhibit D.  Rather, its decision reflects that it narrowly concentrated on selected portions of the administrative record, and failed to consider the statements in context

---

[4] *Stellar IT Solutions, Inc. v. USCIS*, Civ. No. 18-2015 (D.C.D.C. Slip Op. 11/19/18) is attached hereto as Exhibit G.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 21

4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

of the entire detailed descriptions of the business and Mr. Lopez de Lagar's duties and in context of the other evidence in record.

56.    In denying the petition, USCIS stated that Hexacta-US "did not provide information and documentary evidence regarding employees who will perform the day-to-day duties of providing software and technology consultations," suggesting that Mr. Lopez de Lagar is engaged in the hands-on day-to-day software development work.  Exhibit D at 5. There is no evidence to support such a conclusion, and it is nothing more than speculation that Mr. Lopez de Lagar is in any way engaged in such day-to-day activities.

57.    Moreover Hexacta-US submitted evidence to the contrary.  In the company letter of support, Hexacta-US explained, "[Mr. Lopez de Lagar] has not been engaged in hands-on software development or IT solutions, as he has not been active in software development duties for over 10 years. Instead, for the time being when our U.S. clients have projects, as indicated, we have been devoting remote resources from Argentina to provide the project management and technical skills needed by our clients."  Exhibit C at 23.  Hexacta-US provided corroborating evidence in the form of organizational charts, job descriptions, resumes, and communications detailing the roles of the managerial and technical personnel who perform or directly oversee the hands-on day-to-day software development work.  Exhibit C at 61-116. Approximately 90 employees in Argentina support Mr. Lopez de Lagar and the U.S. personnel and operations.  *See, e.g.,* Exhibit C at 23.  Aside from lacking up-to-date skills to perform the software development tasks, Mr. Lopez de Lagar is fully occupied with his executive duties.

58.    In the denial, Defendants also misconstrue evidence to reach the unfounded conclusion that Mr. Lopez de Lagar must be doing the software development.  The denial focuses on a "statement of work" agreement with Credit One Bank:  "However, the statement of work did not provide sufficient information of employee(s) who will deliver the services to your end-clients.  For example, the statement of work for your end-client Credit One Bank, N.A. identified your employee Luciana Zurlo as a Project Manager.  However, there is no information regarding other workers who will support the Project Manager."  Exhibit D at 5.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

59.     Defendants ignored evidence that Credit One Bank has been Hexacta's customer since 2015, is one of the company's largest customers, and that the workers who will support Credit One Bank include the "Technical Manager in U.S. [Luciana Zurlo] and a project manager in Argentina, 65 technical staff in Argentina."  Exhibit C at 23.  The evidence in the company letter of support is further corroborated by organizational charts, resumes, job descriptions, and email communications.  *See* Exhibit C at 62, 72-73, 97.

60.     USCIS acted arbitrarily and capriciously by failing to articulate a satisfactory explanation for the denial that rationally connected the facts to the decision on the above points.  USCIS ignored substantial evidence in the record to overcome the agency's unfounded presumption that Mr. Lopez de Lagar is primarily engaged in software development.

61.     Where the agency "path of analysis" is misguided and "the inferences it produced are questionable," the agency action constitutes a violation of the APA under the arbitrary and capricious standard.  *Motor Vehicle Mfrs.,* 463 U.S. at 44.  USCIS' entire failure to consider important aspects of the evidence and its misapprehension of the evidence resulted in reasoning that runs counter to the evidence before the agency and is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

**C.     Arbitrary, Capricious Disregard of Precedential Authority, *Matter of Z-A-,* and Evidence of Remote Support Staff to Relieve Mr. Lopez de Lagar of Nonexecutive Duties**

62.     Hexacta's current arrangement of having three U.S. employees, with plans to obtain additional U.S. technical staff to meet U.S. client needs, and having additional remote support in Argentina, satisfies the requirements for intracompany transfer of an executive under recent precedent construing INA § 101(a)(44)(C).

63.     In Matter of Z-A-, Inc., the AAO reversed the denial of a small company L-1 for a company vice president, and USCIS adopted the decision as a policy memorandum.  USCIS Policy Memorandum, *Matter of Z-A-, Inc.,* Exhibit F.  Matter of Z-A- addressed L-1A status for a Japanese intracompany transferee for a U.S. subsidiary of a Japanese company.  Similar to Hexacta's situation, the executive, Vice President and Chief Operating Officer, hired two

employees in the United States.  In addition, at the Japanese headquarters, up to eight staff members provided administrative functions for the U.S. subsidiary remotely from Japan. Altogether, up to ten employees directly or indirectly supported the U.S. subsidiary's operations.  This arrangement sufficiently relieved the executive of non-executive duties under the L-1 regulations.  Id.

64.      The AAO decision is noteworthy for the acknowledgement that "staffing levels" should not be the determinative factor for L-1A status, as the statute directs that the Service must "take into account the reasonable needs of the organization, component, or function in light of the overall purpose and stage of development of the organization, component, or function."  INA § 101(a)(44)(C)(4).

65.      As of the time of filing the L-1A extension petition, and through the submission of the RFE response, Hexacta had three employees in the United States:  Mr. Lopez de Lagar, Ms. Zurlo, and Ms. Moynihan.  The U.S. staffing structure met the company's needs considering the substantial support from the head office in Argentina.  The arrangement satisfied the L-1A requirements pursuant to *Matter of Z-A-.*

66.      However, the needs of Hexacta-US were on the brink of change.  For example, in the extension petition, Hextacta described initatives that Mr. Lopez de Lagar was leading, including the "Initiative to increase US headcount."  Exhibit A at 40.  In December 2018, Hexacta signed an agreement with long-standing customer CorVel for "Assignment of Two OnSite Development Team Members" in Portland, Oregon.  Exhibit C at 51.  Hexacta-US also signed an agreement with Nearpod for "two local resources" in Miami.  Exhibit C at 53. Existing corporate agreements in conjunction with the company "Sales Pipeline Report," provided ample corroboration that Hexacta-US attained the structural complexity for Mr. Lopez de Lagar to devote his efforts to executive duties and rely on other Hexacta employees to relieve him of nonexecutive duties.  See Exhibit C at 35.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**D.     Arbitrary, Capricious, and Incorrect Conclusion that Hexacta is Unable to Financially Support the Partner Position**

67.     USCIS stated in its denial that, "It does not appear that you would be able to financially support the beneficiary's executive position."  Exhibit D at 6.

68.     The evidence establishes that Hexacta-US was very close to the 'break even' point in 2018, after being operational only for approximately nine months from April 2018 through December 2018.  With revenue flow commencing in July 2018, Hexacta-US had gross receipts for $143,165 for its initial operating period of April – December 2018, and -$3,843 of net taxable income in 2018, and the company was on target to become profitable in 2019.  Exhibit C at 148, 158.  Under Mr. Lopez de Lagar's leadership, existing Hexacta customers signed new agreements for long-term contracts, and he secured new customers.  Exhibit C at 35-58.  At the time of filing the RFE response, Hexacta-US had a bank account balance of $133,000.  Exhibit C at 140.

69.     USCIS does not explain why the financial position seemed to be insufficient.  There is no regulation under the L-1A category that a company must be profitable in order to extend a new office L-1 beyond the first year.  USCIS appears to construe the lack of an audited financial statement as a basis for denial.  There is no statute or regulation supporting denial on that basis.

70.     A USCIS Director who has "some doubt to the truth" is not justified in denying a petition; the burden of proof is preponderance of the evidence, which means "more likely than not to be the case."  *Matter of Chawathe*, 25 I&N Dec. 369, 375-76 (AAO 2010) (finding evidence of corporate existence sufficient, even though "applicant could have submitted more probative evidence").  In denying the petition, it appears that USCIS may have applied a higher burden of proof, such as "clear and convincing" or "beyond a reasonable doubt," contrary to the requirements for agency review:  "Thus, in adjudicating the application pursuant to the preponderance of the evidence standard, the director must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true."  *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   Hexacta-US submitted over 500 pages of relevant, probative, credible evidence, and the

2   preponderance of the evidence supports the determination that Mr. Lopez de Lagar is an

3   executive.  Business is inherently risky, but the Pipeline Report, statements of work and

4   agreements with clients expanding their projects, generating additional monthly fees provide

5   evidence that it is "probably true" that Hexacta needs Mr. Lopez de Lagar to continue in the

6   executive role directing the U.S. entity.  See Exhibit C at 35 – 54.

### X.  COUNT TWO
(on behalf of plaintiffs Jose Javier Lopez de Lagar, Flavia Paola Sosa, and minor daughters)
**Violation of Administrative Procedure Act
5 U.S.C. § 701, et seq., and
Violation of the Immigration and Nationality Act,
§ 101(a), et seq., and
its Implementing Regulations,
8 C.F.R. § 214.2(l), et seq.**

71.    Plaintiffs re-allege and incorporate herein by reference, as if fully set forth

herein, all the allegations set forth above.

72.    The applications for an extension of stay on behalf of Mr. Lopez de Lagar and

his wife and children were denied solely because Hexacta's L-1A petition was denied.  Because

the denial of Hexacta's petition was arbitrary and capricious, it follows that the denials of the

extensions also were arbitrary and capricious.

### XI.  COUNT THREE
(on behalf of all plaintiffs)
**Injunctive Relief for Irreparable Harm Caused by Violation of
Administrative Procedure Act
5 U.S.C. § 705**

73.    Plaintiffs re-allege and incorporate herein by reference, as if fully set forth

herein, all the allegations set forth above.

74.    Pursuant to 5 U.S.C. § 705, to the extent necessary to prevent irreparable injury,

this Court may issue all necessary and appropriate process to postpone the effective date of an

agency action or to preserve the status or rights pending conclusion of the review proceedings.

75.    The denial of Hexacta's L-1A petition will cause irreparable harm to Plaintiff

Hexacta because it would require an abrupt departure and prevent Hexacta-US from continuing

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

to employ Mr. Lopez de Lagar in the United States on critical ongoing projects for the company and its U.S. customers that have entered into agreements with Hexacta-US, damaging the company's reputation and leaving it vulnerable to competition.  The concurrent denials by USCIS of the applications for extension of stay on behalf of Mr. Lopez de Lagar and his wife and children will cause irreparable harm to Plaintiffs, the Lopez de Lagar family, because those denials leave them without lawful immigration status in the United States and subject them to detention and removal and a three-year bar to reentry if they accrue unlawful presence exceeding 180 days after the date of the denial.  8 U.S.C. § 1182(a)(9)(B)(i)(I).

76.    Postponing the effectiveness of the denials will not require any action on the part of the Defendants and will not cause any harm whatsoever to the Defendants.

77.    Plaintiffs are entitled to a temporary restraining order and preliminary injunction postponing the effectiveness of the denials because Plaintiffs have shown they will likely succeed on the merits; they are likely to suffer irreparable harm in the absence of preliminary relief; the balance of the equities are in favor of Plaintiffs since the Defendants are not prejudiced in any way by granting the requested relief; and granting the relief is in accord with the public interest in enforcing the APA.  The purpose of preliminary injunctive relief is to preserve the status quo or prevent irreparable injury pending the resolution of the underlying claim.  *Sierra On-line, Inc., v. Phoenix Software, Inc.,* 739 F.2d 1415 1422 (9th Cir. 1984).  A temporary restraining order is available to maintain the status quo that existed before a USCIS petition denial, to permit the beneficiary to remain and continue working in the United States.  *See Zuora Inc. v Baran*, No. 18-1949 (N.D. Cal. Apr. 6, 2018).[5]

## XII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

1.    Assume jurisdiction over this matter;

---

[5] *Zuora Inc. v Baran*, No. 18-1949 (N.D. Cal. Apr. 6, 2018), is attached hereto as Exhibit H.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 27
4836-1893-9282v.1 0113017-000002

2.      Hold unlawful and set aside Defendants' decisions denying the I-129 petition filed by Hexacta-US on behalf of Jose Javier Lopez de Lagar and the I-539 application concurrently filed by his wife, Flavia Paola Sosa;

3.      Enter an Order requiring Defendants to approve Plaintiffs' I-129 extension petition in favor of Mr. Lopez de Lagar;

4.      Enter an Order requiring Defendants to approve the I-539 application in favor of Ms. Sosa and the three minor daughters;

5.      Grant Plaintiffs' request for a temporary restraining order and Plaintiffs' request for preliminary injunction postponing the effectiveness of USCIS' decisions and reinstating the Lopez de Lagar family lawful immigration status retroactively as of the date the decisions were made, thereby allowing Mr. Lopez de Lagar to continue working for Hexacta-US and for his family to remain in the United States while the appeal is pending;

6.      Grant reasonable attorney's fees and costs as provided under the Equal Access to Justice Act and the APA and as otherwise permitted by law; and

7.      Grant such further relief as the Court deems just and proper.

DATED this 12th day of April, 2019.

Davis Wright Tremaine LLP
Attorneys for Plaintiffs, Hexacta, Inc.,
Jose Javier Lopez de Lagar, Flavia Paola Sosa,
J.L., D.L., and I.L.

By   _s/ Diane M. Butler_
        Diane M. Butler, WSBA #22030

By   _s/ Amanda McDowell_
        Amanda McDowell, WSBA #52312
        920 Fifth Avenue, Suite 3300
        Seattle, Washington  98104-1610
        Telephone:  206.622.3150
        Email: dianebutler@dwt.com
                  amandamcdowell@dwt.com

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF – 28
4836-1893-9282v.1 0113017-000002

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax