UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HEXACTA INC, et al., | |
| Plaintiffs, | CASE NO. 2:19-CV-00554-RSM-DWC |
| v. | REPORT AND RECOMMENDATION |
| KEVIN MCALEENAN, et al., | Noting Date: June 21, 2019 |
| Defendants. | |

The District Court has referred this action to United States Magistrate Judge David W. Christel. Currently pending before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. Dkt. 13. After considering the record,[1] the Court recommends the Honorable Ricardo Martinez, the Chief District Judge assigned to this case, grant Plaintiffs' Motion and issue a preliminary injunction.

---

[1] On June 6, 2019, Defendants filed the Certified Administrative Record ("CAR"). Dkt. 29, 30. The ultimate review of this case will be limited to the CAR. However, in arguing the Motion, the parties rely on and cite to documents and evidence submitted prior to Defendants filing the CAR. Therefore, for the purposes of this Report and Recommendation, the Court considered and cited to the records relied on by the parties, rather than the CAR. The Court notes the parties indicated at oral argument that the evidence provided by Plaintiffs to support the Motion is included in the CAR.

## I.    Background

Plaintiff Hexacta, Inc., an Argentina company, relocated Plaintiff Jose Javier Lopez de Lagar to the United States to establish and head its U.S. Hexacta subsidiary office located in the Seattle area. *See* Dkt. 1, ¶¶ 32-33. In 2017, Hexacta successfully petitioned Defendant U.S. Citizenship and Immigration Services ("USCIS") under Form I-129 Petition for Nonimmigrant Worker, known as an L-1A petition, for Lopez de Lagar. *Id*. at ¶ 33. USCIS granted Lopez de Lagar L-1A status under "new office" regulations for a period of one year – from January 8, 2018 through January 7, 2019 – with an option to apply for extensions. *See id*. at ¶¶32-34; *see also* Dkt. 13; Dkt. 15, Navarro Dec., ¶ 7.

In January 2018, upon the approval of their petitions, Lopez de Lagar relocated to the U.S. with his wife, Plaintiff Flavia Paola Sosa, their three children, and their dog. Dkt. 1, ¶ 34; Dkt. 14, Lopez de Lagar Dec., ¶¶ 6, 20. In December of 2018, Hexacta petitioned for a two-year extension of Lopez de Lagar's L-1A status. Dkt. 1, ¶ 41. USCIS issued a Request for Evidence ("RFE") on December 21, 2018. *Id*. at ¶ 42. Hexacta responded to the RFE on February 25, 2019. *Id*. at ¶ 43. On March 11, 2019, USCIS denied Hexacta's extension petition, finding Lopez de Lagar was not a manager or executive in the U.S. *Id*. at ¶¶ 44-45. USCIS also denied derivative L-2 applications for Lopez da Lagar's wife and three children. *See id*.

On April 12, 2019, Plaintiffs filed the Complaint, wherein they challenge Defendants' denial of the L-1A executive immigration petition filed on behalf of Plaintiff Jose Javiar Lopez de Lagar and the derivative L-2 applications for Flavia Paola Sosa and their three children. Dkt. 1. On April 18, 2019, Plaintiffs filed the Motion. Dkt. 13. On April 22, 2019, the undersigned recommended Chief Judge Martinez issue a temporary restraining order ("TRO") halting the accrual of unlawful presence and unauthorized employment until the Court heard and entered an

1   order deciding Plaintiffs' request for a preliminary injunction. *See* Dkt. 16. Chief Judge Martinez

2   adopted the Report and Recommendation on April 23, 2019. Dkt. 17.

3          After counsel for Defendants entered an appearance, the Court directed the parties to

4   submit a briefing schedule for the Court to consider Plaintiffs' request for a preliminary

5   injunction. *See* Dkt. 19. The parties provided a proposed briefing schedule, which was accepted

6   by the Court. *See* Dkt. 20, 21. Briefing was completed on May 24, 2019, and the undersigned

7   heard oral argument on June 4, 2019.[2] At the conclusion of oral argument, the undersigned

8   allowed the parties to submit supplemental briefing. Both parties submitted supplemental

9   briefing on June 5, 2019, which the Court has considered. *See* Dkt. 27, 28.

10   **II.    Discussion**

11       A. *Jurisdiction*

12          Defendants first assert this Court lacks jurisdiction over Plaintiffs' request for injunctive

13   relief staying their removal from the country. Dkt. 23, pp. 11-12.[3] Plaintiffs are not challenging a

14   final removal order and there is no evidence showing removal proceedings have been initiated.

15   *See* Dkt. 1, 26. Further, Defendants provided evidence showing USCIS will not issue a Notice to

16   Appear, which is the "necessary first step" to seek removal of Lopez de Lagar and his family

17   from the country, "during the pendency of administrative or judicial review of the agency

18   decision denying the L-1A petition extension request." Dkt. 24, Rangaswamy Dec., ¶ 16. As

19   Plaintiffs are not challenging a removal order, the Court is not persuaded by Defendants'

20   jurisdictional argument.

21

22   ―――――――――――――

23       [2] During the hearing, the Court heard argument from Attorney Diane Butler, on behalf of Plaintiffs, and Attorney Priscilla Chan, on behalf of Defendants.
       [3] During oral argument, counsel for Defendants conceded the Court has jurisdiction to decide whether a

24   preliminary injunction should be issued in this case.

1    Defendants also assert the issue of removal is moot and the Court lacks jurisdiction

2   because USCIS has agreed not to seek removal of Lopez de Lagar or his family during this

3   pending litigation. Dkt. 23, p. 12. However, Plaintiffs are not challenging removal proceedings.

4   *See* Dkt. 1. Rather, Plaintiffs assert Defendants' decision to deny the L-1A petition was a

5   violation of the law. *See* Dkt. 1. Plaintiffs request Lopez de Lagar and his family be allowed to

6   stay in the U.S. legally pending the outcome of this litigation and Lopez de Lagar be allowed to

7   work. *See* Dkt. 13. Plaintiffs also note Hexacta will suffer harm if Lopez de Lagar is unable to

8   work in the U.S. while awaiting a decision from this Court. *Id*. As potential removal from the

9   U.S. is not the only harm raised in the Motion, Defendants' argument that the Motion is moot is

10  unpersuasive.

11    B.  *Preliminary Injunction*

12    Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon

13  a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council,*

14  *Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per

15  curiam)). To obtain a preliminary injunction, the moving party must "establish that he is likely to

16  succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

17  relief, that the balance of equities tips in his favor, and that an injunction is in the public

18  interest." *Id.*

19    As an alternative to this test, a preliminary injunction is appropriate if "serious questions

20  going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's

21  favor," thereby allowing preservation of the status quo when complex legal questions require

22  further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35

23  (9th Cir. 2011). However, the "serious questions" approach supports the court's entry of an

24

injunction only so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22.

  1. Success on the Merits

   Plaintiffs argue they are likely to succeed on the merits of their claims, brought under the Administrative Procedures Act ("APA"), because Defendants' decision to deny the L-1A petition runs counter to the evidence submitted in support to the petition and lacks a rational connection to the record or the law. Dkt. 13, p. 17. The APA provides that a court "shall ... hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To satisfy this standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, ⎯⎯ U.S. ⎯⎯, 136 S.Ct. 2117, 2125 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[I]f an agency relies on two grounds for a decision, a court may sustain it if one is valid and if the agency would clearly have acted on that ground even if the other were unavailable." *Syracuse Peace Council v. FCC*, 867 F.2d 654, 657 (D.C. Cir. 1989). However, because "a reviewing court ... must judge the propriety of [agency] action solely by the grounds invoked by the agency," *post hoc* explanations that the agency did not articulate when it acted are insufficient. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

   At issue is whether Defendants' decision to deny Lopez de Lagar's L-1A visa petition was arbitrary and capricious. To qualify for L–1A classification, the alien beneficiary must have

been continuously employed in a managerial or executive capacity by an overseas entity for one year within the three years prior to the alien's application for admission to the U.S. *See* 8 U.S.C. § 1101(a)(15)(L). Additionally, the alien beneficiary must be transferring to the U.S. entity to work primarily in a managerial or executive capacity for that U.S. entity. *Id*. The burden of establishing these requirements is on the alien beneficiary and his employer. *See Brazil Quality Stones, Inc. v. Chertoff*, 531 F.3d 1063, 1069 (9th Cir. 2008).

Plaintiffs assert Lopez de Lagar has shown he transferred to the U.S. to work primarily in an "executive capacity."[4] "Executive capacity" means an assignment within an organization in which the employee primarily:

> (i) Directs the management of the organization or a major component or function of the organization;
> (ii) Establishes the goals and policies of the organization, component, or function;
> (iii) Exercises wide latitude in discretionary decision-making; and
> (iv) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

*Id*. at § 1101(a)(44)(B); 8 C.F.R. § 214.2(1)(1)(ii)(C).

Here, USCIS denied the L-1A petition, filed on behalf of Lopez de Lagar, because Plaintiffs did not establish Lopez de Lagar "would be employed in a primarily managerial or executive capacity in the United States." Dkt. 1-6, p. 7. In determining Lopez de Lagar was not employed primarily in a managerial or executive capacity, USCIS found Plaintiffs did not: (1) establish that the U.S. entity's organization has reached a structural complexity to support an executive position in the U.S.; and (2) show Hexacta is able to financially support Lopez de Lagar's executive position. *Id*. at pp. 6-7.

---

[4] During oral argument, Plaintiffs argued the petition for L-1A status was based on Lopez de Lagar meeting the "executive capacity" definition. As it is immaterial for this Report and Recommendation whether Lopez de Lagar qualifies under the managerial or executive capacity definitions, this Court provides the statutory qualifications for executive capacity only.

1    Initially, Defendants assert USCIS also denied the L-1A petition because Hexacta-U.S.

2  failed to provide sufficient evidence substantiating that Lopez de Lagar's day-to-day business

3  was primarily in an executive capacity. Dkt. 23, pp. 17-19. USCIS did not state the L-1A petition

4  was denied because the evidence was insufficient to substantiate that Lopez de Lagar's day-to-

5  day duties were primarily in an executive capacity. *See* Dkt. 1-6, pp. 4-6. Rather, in providing a

6  summary of the record and the application process, USCIS referenced information regarding the

7  initial petition, the RFE, and evidence Plaintiffs submitted in response to the RFE, including

8  Lopez de Lagar's proposed daily duties. *See* Dkt. 1-6, pp. 4-6. As USCIS did not deny the L-1A

9  petition because the evidence failed show Lopez de Lagar's day-to-day duties were primarily in

10  an executive capacity, the Court cannot affirm USCIS's decision on this ground. *See Chenery*

11  *Corp.*, 332 U.S. at 196.

12    First, USCIS determined Hexacta-U.S. did not have the structural complexity to support

13  Lopez de Lagar's executive position in the U.S. *Id*. To support this finding, USCIS first found

14  there was insufficient evidence regarding the subordinate staff who will perform day-to-day

15  duties of providing software and technology consultations and insufficient evidence

16  demonstrating how the staff from Argentina would efficiently provide services to the U.S.

17  clients. *Id*. at p. 6. Evidence submitted to USCIS shows Hexacta has had contracts for services

18  with clients in the U.S. since 2010 and staff has provided technical support from Argentina for

19  those clients. Dkt. 1-5, p. 24. In addition to the Argentina staff resources, with Hexacta-U.S.,

20  Hexacta is now able to serve certain U.S. clients with local, U.S. staff and resources. *Id*. For

21  example, Credit One Bank is supported by a Technical Manager in the U.S., a project manager in

22  Argentina, and 65 technical staff in Argentina. *Id*. Four additional U.S. clients are supported by

23  project managers and technical staff located in Argentina. *Id*. Contrary to USCIS's findings, the

24

1    record reflects staff, located in Argentina, have been providing efficient, day-to-day software and

2    technology services to U.S. clients beginning in 2010 and the U.S. office has been providing

3    day-to-day services to U.S. clients beginning in 2018. As such, USCIS's first reasons for finding

4    Hexacta-U.S. did not have the structural complexity to support Lopez de Lagar's executive

5    position does not appear to be based on a proper consideration of the record.

6         To support finding Hexacta-U.S. did not have the structural complexity to support Lopez

7    de Lagar's executive position in the U.S., USCIS next stated that emails contained in the

8    supporting documents attached to the L-1A petition failed to provide detail regarding the subject

9    and context of the discussions involved in the correspondences. Dkt. 1-6, p. 6. USCIS does not

10   explain how this evidence is related to finding the structural complexity of Hexacta-U.S. fails to

11   support an executive position. Therefore, USCIS's conclusion regarding the email evidence does

12   not support USCIS's decision to deny the L-1A petition. *See Crickon v. Thomas*, 579 F.3d 978,

13   982 (9th Cir. 2009) (citations omitted) (finding the court may not infer an agency's reasoning

14   from mere silence).

15        Finally, to support its decision that Hexacta-U.S. lacked the structural complexity

16   necessary to support an executive position, USCIS found Hexacta did not provide information

17   regarding the staff positions that would be responsible for providing services for Hexacta-U.S.

18   and the organization chart did not show who would perform consultation services. Dkt. 1-6, pp.

19   6-7. USCIS noted Hexacta did not provide information regarding who would support Luciana

20   Zurlo, the technical manager for the Credit One Bank account. *Id.* at p. 6. Evidence submitted to

21   USCIS shows there is a technical manager, a project manager, and a team of 65 technical staff

22   supporting Credit One Bank. *See* Dkt. 1-5, pp. 24, 63. Furthermore, evidence shows Zurlo is in a

23   managerial position reporting to Lopez de Lagar and 65 technical staff supporting the Credit One

24

Bank account report to Zurlo. *See* Dkt. 1-1, pp. 56-58; Dkt. 1-5, p. 63. USCIS does not explain why the evidence showing 65 technical staff is insufficient to support Zurlo. *See* Dkt. 1-6, p. 6.

USCIS also took issue with a statement of work showing Mauro Gonzalez, from Argentina, has been and will be performing work for the maintenance and support of the current applications of TransAct developed by Hexacta. *See id*.; *see also* Dkt. 1-5, p. 50. Defendants do not explain how evidence that another person will be responsible for delivering services to an end-client shows Hexacta-U.S. fails to have an adequate support staff in place to support Lopez de Lagar's executive position. *See* Dkt. 1-6, p. 6; Dkt. 23, p. 9. Rather, using another individual, regardless of this person's position within the company, indicates there are support staff in place relieving Lopez de Lagar from day-to-day duties of providing software and technology services.

An organizational chart submitted with the petition also shows at least six managers and 98 support staff located in both the U.S. and Argentina report to Lopez de Lagar. Dkt. 1-5, p. 63. Evidence shows employees who report to Lopez de Lagar have advanced degrees and are responsible for performing and leading teams that perform software and technology support to the end-user (client), payroll, billing, marking, advertising, and recruiting. *See id*. at pp. 64-87. Additionally, there is evidence showing managers in Argentina interact with the U.S. clients. *See e.g., id*. at p. 68. For example, Agustin Pelliza, a technical manager working on the Equinauts contract, states he interacts with the U.S. client; Marina Rolla, an administration and finance coordinator, directly deals with banks and venders for Hexacta-U.S.; and David Alejandro Wasinger Espro is the general project manager for all projects related to a U.S. client (CorVel). *Id*. at pp. 64, 68, 79. While there may not be specific evidence showing which employees perform "consultations," there is substantial evidence showing that Hexacta has the structural

complexity to support an executive position in the U.S. and that Lopez de Lagar is not performing day-to-day duties of providing software and technology consultations and services.

Based on a review of the record, it is unclear from USCIS's decision if all the relevant evidence regarding Hexacta's structure and its employee's responsibilities was considered. Thus, in denying the L-1A petition, it does not appear USCIS considered the entire record when providing its final bases for concluding Hexacta lacked the structural complexity necessary to support an executive position in the U.S. *See Plascencia-De Haro v. Lynch*, 2016 WL 4073295, at *3 (N.D. Cal. Aug. 1, 2016) (remanding case to USCIS where the agency's decision did not address or even reference the petitioner's evidence).

In sum, evidence in the record belies USCIS's finding that Hexacta did not have the structural complexity to support Lopez de Lagar's executive position in the U.S. or have subordinate staffing to relieve Lopez de Lagar from primarily performing non-qualifying duties of directly providing software and consulting services to end-clients. Therefore, the Court finds Plaintiffs will likely to be able to show the USCIS's first reason for denying the L-1A petition was arbitrary and capricious. *See State Farm*, 463 U.S. at 43 (finding an agency decision would normally be arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency"); *Butte Cty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of" the APA).

Second, USCIS denied the L-1A petition because the agency found the evidence indicated Hexacta did not appear to be able to financially support Lopez de Lagar's executive position. *See* Dkt. 1-6, p. 7. Specifically, USCIS noted there was an inconsistency between Lopez de Lagar's stated annual salary of $120,000.00 and payroll records indicating Lopez de

1  Lagar only received $72,000.00 for his employment with the U.S. entity in 2018. *Id*. USCIS also

2  found the financial statements were unaudited, Hexacta-U.S.'s total expenses exceeded its gross

3  profit, and the most recent bank statements show a balance of approximately $133,000.00. *Id*.

4       Plaintiffs argue USCIS arbitrarily ignored additional evidence showing Hexacta could

5  financially support an executive position. Regarding the payroll inconsistency, the evidence

6  shows that, on December 4, 2018, the President of Hexacta-S.A. authored a letter stating Lopez

7  de Lagar "*will be* compensated at an annual rate of $ 120,000.00," implying a salary of

8  $120,000.00 for 2019. Dkt. 1-1, p. 42 (emphasis added). Further, the L-1A petition states Lopez

9  de Lagar would receive a yearly salary of $120,000.00, with January 2019 through January 2021

10  as the dates of intended employment. *Id*. at p. 27. The parties do not cite to records showing

11  Lopez de Lagar was guaranteed a salary of $120,000.00 in 2018. Rather, the evidence shows he

12  would receive a salary of $120,000.00 in 2019. Thus, the evidence does not show there is an

13  inconsistency between Lopez de Lagar's 2018 salary and his stated salary for 2019.

14       Evidence also shows Hexacta-U.S. was very close to the "break even" point in 2018,

15  after being operational for approximately nine months. Dkt. 1-5, p. 34. Hexacta-U.S. is on target

16  to become profitable in 2019. *Id*. The evidence submitted to USCIS contained a Sales Pipeline

17  Report from July 2018 through December 2018. *Id*. at p. 36. The Sales Pipeline Report showed

18  closed contracts in the amount of $356,400.00 and approximately $1,350,000.00 in prospective

19  or pending contracts. *Id*. The evidence also included invoices paid to Hexacta-U.S. for services

20  rendered in the U.S. *Id*. at pp. 37-45. Further, there is evidence Hexacta-S.A. had a gross annual

21  income of $6.9 million. *See* Dkt. 1-1, p. 27, Dkt. 1-5, p. 153. Plaintiffs also submitted a balance

22  sheet as of December 2018 for Hexacta-U.S. and a profit and loss document for January through

23  December 2018 for Hexacta-U.S. Dkt. 1-5, pp. 158-59.

24

While there is evidence showing Hexacta-U.S. was not profitable in 2018, the evidence relied on by USCIS and additional evidence not cited to by USCIS shows Hexacta is able to financially support Lopez de Lagar's position. As such, the Court finds Plaintiffs are likely to be able to show the USCIS's second reason for denying the L-1A petition was arbitrary and capricious. *See Stellar IT Solutions, Inc. v. United States Citizenship and Immigration Services*, 2018 WL 6047413, at * 12 (D.D.C. Nov. 19, 2018) (finding plaintiffs were likely to succeed in showing USCIS's conclusion was not reasonable where USCIS ignored evidence in the record).

In conclusion, Plaintiffs have shown they are likely to succeed on the merits regarding whether USCIS's decision to deny the L-1A petition was arbitrary and capricious. Therefore, Plaintiffs have met the first prong of the preliminary injunction standard.

2.  Irreparable Harm

Second, for a preliminary injunction to be issued, Plaintiffs must show they face immediate and irreparable injury as a result of Defendants' denial of the L-1A petition filed on behalf of Lopez de Lagar. Evidence shows that, if Lopez de Lagar must leave the U.S. immediately, Hexacta may be required to close or restructure its U.S. operations, will likely have to terminate U.S. employees, and will be vulnerable to competitors due to Lopez de Lagar's abrupt return to Argentina. Dkt. 15, Navarro Dec., ¶¶ 12-15.

The Lopez de Lagar family is also facing irreparable injury. Plaintiffs allege the Lopez de Lagar family are facing the loss of lawful immigration status and the consequences of unlawful presence in this country. Dkt. 13, p. 9. Plaintiffs state the Lopez de Lagar family has been accruing unlawful presence since January 7, 2019 and, if they do not leave the U.S. before July 6, 2019, they will be subject to three-year bar from returning. *Id*. at p. 18. As Lopez de Lagar does not have lawful status, he cannot work and is no longer receiving any income. Dkt. 14,

1  Lopez da Lagar Dec., ¶¶ 14, 15-21; Dkt. 15, Navarro Dec., ¶ 11. The Ninth Circuit has held the

2  "loss of opportunity to pursue [one's] chosen profession" constitutes irreparable harm. *Enyart v.*

3  *National Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011); *see also*

4  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("We have frequently

5  recognized the severity of depriving a person of the means of livelihood."); *Arizona Dream Act*

6  *Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (finding irreparable harm where

7  professional opportunities are limited). If required to leave the United States immediately, J.L.,

8  the oldest child, would be required to repeat the sixth grade and the three children would not

9  complete the school year. Dkt. 14, Lopez da Lagar Dec., ¶¶ 18-19. The Lopez de Lagar family

10  would face financial, emotional, and housing difficulties and be restricted in their ability to

11  travel. *Id*. at ¶¶ 14-24.

12          As Hexacta, Lopez de Lagar, and Lopez da Lagar's wife and children face ongoing,

13  significant harms, the Court finds Plaintiffs have met their burden of demonstrating they face

14  immediate and irreparable injury. *See Ruiz-Diaz v. U.S.*, 2008 WL 3928016, at * 2 (W.D. Wash.

15  Aug. 21, 2008) ("The Court is hard-pressed to imagine a more traumatic and irreparable harm

16  than being uprooted from your job, home, and community for an undetermined length of time.").

17               3.   Balance of Hardships and Public Interest

18          The remaining two factors of the preliminary injunction standard—balance of hardships

19  and the public interest—merge when, as here, the government is the opposing party. *See Nken v.*

20  *Holder*, 556 U.S. 418, 435 (2009). The Court recognizes there is a strong interest to be found in

21  the effective and efficient enforcement of the nation's immigration laws. However, this interest

22  does not outweigh the ongoing harm Plaintiffs are experiencing as a result of being denied the L-

23

24

1A petition. Furthermore, public interest exists in ensuring that the government complies with its

obligations under the law and follows its own procedures.

Therefore, the Court finds a preliminary injunction does not cause Defendants undue

hardships, nor does the issuance of a preliminary injunction in this case cause any significant

public consequences. *See Stellar IT*, 2018 WL 6047413 at * 12.

### 4. Bond Amount

"The court may issue a preliminary injunction . . . only if the movant gives security in an

amount that the court considers proper to pay the costs and damages sustained by any party

found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, a district

court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of

harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906,

919 (9th Cir. 2003). The undersigned finds any potential costs and damages to Defendants are de

minimis and therefore recommends the Court decline to impose a bond requirement.

## III. Conclusion

For the above stated reasons, the undersigned recommends Plaintiffs' Motion (Dkt. 13)

be granted and a preliminary injunction be issued restraining Defendants from giving effect to

their denial of (1) the Form I-129 Petition for Nonimmigrant Worker, otherwise known as an L-

1A petition, that Plaintiff Hexacta, Inc., filed on behalf of Jose Javier Lopez de Lagar; and (2)

the Form I-539 Application to Extend/Change Nonimmigrant Status, otherwise known as an L-2

application, that Flavia Paola Sosa filed on behalf of herself and her and Lopez de Lagar's three

daughters, J.L., D.L, and I.L., until the Court issues a decision on the merits. The undersigned

also recommends the Court decline to impose a bond requirement.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). However, given the facts and immediacy of this matter, the Court recommends Chief Judge Martinez consider this Report and Recommendation after an expedited objection period. At oral argument, the parties agreed to an expedited objections period. Thus, the Court recommends the parties file objections on or before June 17, 2019 and responses to objections by June 21, 2019. The Court directs the clerk to set the matter for consideration on June 21, 2019, as noted in the caption.

Dated this 10th day of June, 2019.

David W. Christel
United States Magistrate Judge