UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HEXACTA INC., et al., | CASE NO. C19-554 RSM |
| Plaintiffs, | ORDER AWARDING ATTORNEYS' FEES AND COSTS |
| v. | |
| KEVIN MCALEENAN, et al., | |
| Defendants. | |

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Application for an Award of Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act. Dkt. #44. Defendants,[1] after previously approving Plaintiff Jose Javier Lopez de Lagar ("Lopez de Lagar") for L-1A immigration status,[2] denied his extension petition. Plaintiffs[3] sued, challenging what they maintained was an arbitrary and capricious decision. Dkt. #1. Plaintiffs sought injunctive relief preventing Defendants from

---

[1] Defendants include the United States Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("USCIS"), and three individuals—named in their official capacities—within DHS.

[2] Lopez de Lagar's family—his wife and three daughters—were granted derivative L-2 status.

[3] Plaintiffs include Lopez de Lagar, his wife Flavia Paola Sosa, their three minor children, and Lopez de Lagar's employer, Hexacta, Inc.

ORDER – 1

treating Lopez de Lagar and his family as unlawful residents. Dkt. #13. The Court enjoined Defendants from acting on their denial of Lopez de Lagar's extension petition and those of his family. Dkt. #37. Two days later, Defendants reversed course and approved Lopez de Lagar's, and his family's, petition. Dkt. #38 at 5–12. The action was thereafter dismissed. Dkt. #43. Plaintiffs now seek an award of $79,505.83 for attorneys' fees and costs expended in this matter. Dkt. #44 at 2.

## II. BACKGROUND

### A. Factual Background

Plaintiff Hexacta, Inc. ("Hexacta"), an Argentina company, relocated Lopez de Lagar to the United States to establish and head its U.S. Hexacta subsidiary office located in the Seattle area. *See* Dkt. #1 at ¶¶ 32–33. In 2017, Hexacta successfully petitioned Defendant U.S. Citizenship and Immigration Services ("USCIS") under Form I-129 Petition for Nonimmigrant Worker, known as an L-1A petition, for Lopez de Lagar. *Id*. at ¶ 33. USCIS granted Lopez de Lagar L-1A status under "new office" regulations for a period of one year—from January 8, 2018 through January 7, 2019—with an option to apply for extensions. *See id*. at ¶¶ 32–34; *see also* Dkt. #13; Dkt. #15 at ¶ 7.

Because of Lopez de Lagar's L-1A status, his wife, Plaintiff Flavia Paola Sosa, and their three children were granted derivative L-2 status. Dkt. #1 at ¶ 34. The family moved to the United States in January 2018. *Id.* In December of 2018, Hexacta petitioned for a two-year extension of Lopez de Lagar's L-1A status. *Id.* at ¶ 41. USCIS issued a Request for Evidence on December 21, 2018, and Hexacta responded on February 25, 2019. *Id*. at ¶¶ 42–43. On March 11, 2019, USCIS denied Hexacta's extension petition, finding Lopez de Lagar was not a manager or executive in the U.S. *Id*. at ¶¶ 44–45. USCIS also denied derivative L-2 applications for Lopez de Lagar's family. *See id*.

ORDER – 2

**B. Procedural History**

On April 12, 2019, Plaintiffs filed the Complaint, challenging Defendants' denials of the L-1A executive immigration petition filed on behalf of Lopez de Lagar and the derivative L-2 applications for Lopez de Lagar's family. *Id.* Plaintiffs sought, and were granted, a temporary restraining order preventing Defendants from giving effect to their petition denials during the pendency of this action. Dkt. #17. The temporary restraining order was later replaced by a preliminary injunction pending resolution of this matter. Dkt. #37. Two days later, Defendants reversed course and granted Lopez de Lagar L-1A status and his family derivative L-2 status. Dkt. #38 at 5–12.

As a result, the parties agreed that dismissal was appropriate, but disagreed as to whether Plaintiffs should be awarded attorneys' fees and costs. Dkts. #39 and #40. The Court agreed that dismissal was appropriate and allowed Plaintiffs to seek attorneys' fees and costs. Dkt. #43. This Motion followed.

### III. DISCUSSION

**A. Legal Standard for Award of Fees Under the Equal Access to Justice Act**

The Equal Access to Justice Act ("EAJA") provides in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). To be eligible for EAJA attorney fees: (1) the claimant must be a "prevailing party;" (2) the government's position must not have been "substantially justified;"

ORDER – 3

1 and (3) no "special circumstances" must exist that make an award of attorney fees unjust.[4]

*Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 158 (1990).

### B. Plaintiffs Are Prevailing Parties[5]

To be considered a prevailing party for the purposes of a fee award, the party must achieve a "material alteration of the legal relationship of the parties" and the alteration must be "judicially sanctioned." *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.,* 532 U.S. 598, 604–05 (2001)). Conversely, where a lawsuit simply prompts a party's voluntary change, the alteration of the legal relationship "lacks the necessary judicial *imprimatur*." *Id.* (quoting *Buckhannon,* 532 U.S. at 605) (emphasis in original).

The Court has little problem concluding that Plaintiffs. emerged from this action as the prevailing party. There was clearly a material alteration in the legal relationship between the parties. Before the action, Plaintiffs were unlawfully present, subject to deportation, and accruing unlawful presence. The Court's preliminary injunction enjoined Defendants from acting on those bases. Two days later, Defendants re-opened Plaintiffs' petitions and granted Plaintiffs lawful status, protecting them from removal without further, and different, proceedings.

The Court also finds sufficient judicial imprimatur. After rejecting Plaintiffs' petitions and seeking their removal for more than four months, Defendants reversed course two days after the Court's preliminary injunction. The Court may not have ordered Defendants to do so, but the Court's ruling was certainly an impetus. Under these circumstances, the Court concludes that

---

[4] Defendants do not argue that a special circumstance makes fees unjust in this case.

[5] The parties do not dispute that Plaintiffs qualify as a "party" for purposes of the EAJA. *See* 28 U.S.C. § 2412(d)(2)(B) (requiring individuals to have no more than $2,000,000 and corporations to not have more than 500 employees or $7,000,000 to qualify as a "party" under the statute).

ORDER – 4

the preliminary injunction was sufficient judicial imprimatur. *See also Watson v. Cnty. of Riverside*, 300 F.3d 1092 (9th Cir. 2002) ("A preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*.").

The Court also is not persuaded by Defendants' arguments that only a judgment or a consent decree is sufficient judicial imprimatur for prevailing party status. *See* Dkt. #50 at 3–4 (citing *Texas State Teachers Ass'n. v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 783 (1989) and *Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002)). But this argument runs counter to later cases concluding that while *Buckhannon* cited those two actions as examples of judicial imprimatur, its use was not intended to be a limitation. *See Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013) (explaining that "[j]udicial imprimatur can come in the form of an enforceable judgment on the merits or a court-ordered consent decree, . . . but those are not the exclusive means of satisfying the requirement" and citing cases in support).

Defendants argue that any success realized by Plaintiffs was "purely technical or *de minimus*." Dkt. #50 at 3 (quoting *Texas State Teachers Assn.*, 489 U.S. at 783) (quotation marks omitted). Defendants maintain that Plaintiffs did not actually prevail because their Complaint sought "to obtain a court order setting aside USCIS's denials of their L1-A and L-2 nonimmigrant visa applications." *Id.* at 4 (citing Dkt. #1 at p. 28). But this both reads Plaintiffs' requested remedy too narrowly and overlooks the tangible victory Plaintiffs obtained. *See Wood v. Burwell*, 837 F.3d 969, 975 (9th Cir. 2016) ("relief need not be of 'precisely the same character as the relief sought in the complaint' so long as it 'serves the goals of the claim' and 'require[s] defendants to do something they otherwise would not have been required to do'") (citations omitted). "Armed with the preliminary injunction, [Plaintiffs] forced [Defendants] to do something [they] would not otherwise have had to do—namely, allow" Plaintiffs to remain in the United States lawfully. *Higher Taste, Inc.*, 717 F.3d at 716–17. This victory was not

ORDER – 5

"ephemeral" or temporary solely because Defendants capitulated following the Court's preliminary injunction. *See id.* at 717 (Defendants' "action in rendering the case moot ensures that the injunction's alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation").

**C. Defendants' Position Was Not Sufficiently Justified**

The test for determining whether the government was substantially justified is whether its position had a reasonable basis both in law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Flores v. Shalala*, 49 F.3d 562, 569–70 (9th Cir. 1995). The burden is on the government to prove substantial justification. *Flores*, 49 F.3d at 569. In evaluating the government's position, the Court must look at both the underlying government conduct and the positions taken by the government during the litigation. *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013). If the underlying agency action was not substantially justified, the court need not consider whether the government's litigation position was substantially justified. *Id.* at 872.

"The government's failure to prevail does not raise a presumption that its position was not substantially justified." *Kali v. Bowen*, 854 F.2d 329, 334 (9th Cir. 1988). However, a finding that the agency decision was not supported by substantial evidence is a "strong indication" that the government's position was not substantially justified. *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005). "Indeed, it will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Id.* (quoting *Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1085 (9th Cir. 2002)); *Meier*, 727 F.3d at 872 (same).

The government cannot carry its burden here. As laid out in the R&R "USCIS found Plaintiffs did not: (1) establish that [Hexacta's] U.S. entity's organization has reached a structural complexity to support an executive position in the U.S.; and (2) show Hexacta is able to

ORDER – 6

financially support Lopez de Lagar's executive position." Dkt. #31 at 6. But the Court rejected USCIS's findings and conclusions, noting that they were unsupported by the administrative record. Dkts. #31 and #37. The Court does not imply that Defendants' position cannot be sufficiently justified simply because the Court found Plaintiffs likely to prevail on the preliminary injunction briefing. But, the result is certainly strong evidence that Defendants have not carried their burden of establishing that the position was substantially justified here.

### D. Reasonable Award of Fees and Costs

The United States Supreme Court has held that "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Further, if the government disputes the reasonableness of the fee, then it also "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (citations omitted). The Court has an independent duty to review the submitted itemized log of hours to determine the reasonableness of hours requested in each case. *See Hensley,* 461 U.S. at 433, 436–37. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433.

#### 1. Reasonable Hours

Plaintiffs request compensation for 140.40 hours and supports the request with declarations and billing records. Primary counsel included a partner, Ms. Butler, and an associate, Ms. McDowell, who billed 89.80 hours and 39.90 hours respectively. Dkt. #44 at 7. Plaintiff also seeks compensation for the time of two additional partners—10.20 hours—for their

ORDER – 7

assistance in preparing for oral argument and for half an hour of research by a librarian. *Id.* The Court finds the hours requested reasonable.

Defendants argue that Plaintiffs only succeed on some of their claims and should not be allowed to recover for all time spent working on the case and that the time claimed is excessive. Dkt. #50 at 9–10. The Court does not agree on either point. Plaintiffs obtained the relief they sought and have already attempted to remove "excessive, redundant, and unnecessary" time. Dkt. #51 at 6. While the Court perhaps could squabble with the division of labor and time spent on individual tasks, the Court finds that, on the whole, the hours claimed are reasonable.

**2. Reasonable Rate**

Attorneys' fees under the EAJA "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Within the Ninth Circuit, a cost of living adjustment is capped at $204.25 for work performed in 2019. *See Thangaraja*, 428 F.3d at 876–77; Ninth Circuit Rule 39-1.6. Plaintiffs request hourly rates well in excess of this maximum, ranging from $415-940 per hour, to align with "the fees generally prevailing in the relevant immigration law community." Dkt. #44 at 8. As justification for this departure, Plaintiffs argue primarily that qualified attorneys have limited availability and that the need for urgent relief in this action are both special factors justifying an increase above the statutory maximum. *Id.* at 8–9. Plaintiff relies on declarations of Ms. Butler and Mr. Klasko, a Philadelphia immigration attorney. Dkts. #45 and #46.

The Court finds Plaintiffs' supporting declarations overly conclusory. Mr. Klasko establishes his immigration law credentials and certainly supports Plaintiffs' argument that Ms. Butler is highly effective immigration counsel. Dkt. #46 at ¶¶ 2–11. But Mr. Klasko otherwise provides few specifics. Mr. Klasko attributes Ms. Butler's tactical decisions—naming Lopez de

ORDER – 8

Lagar and his family as Plaintiffs and seeking a preliminary injunction—as requiring her "special skills and abilities" and her deep understanding of complex issues of immigration law and "strategic alternative." *Id.* at ¶¶ 13–14. While the Court does not dispute that Ms. Butler performed admirably, Plaintiffs' supporting declarations do not extend beyond such generalities and the matter does not appear overly complex to the Court. As to the rates requested, Mr. Klasko avers simply that Ms. "Butler's rate of $585 per hour requested in this case is reasonable and at the prevailing market rate for attorneys of her experience and expertise in the areas of immigration law and complex federal litigation."[6]

In response, Defendants argue that the requested rates are excessive, that the case did not require any particular immigration expertise, and that Plaintiffs' counsel overstates the impact of her prior experience. Dkt. #50 at 8–9. The Court is inclined to agree with Defendants that a departure is not warranted here. This decision is further solidified by Plaintiffs' decision not to respond to Defendants' arguments or pursue an enhanced hourly rate in their reply, effectively conceding the issue. *See* Dkt. #51. On this record, the Court cannot conclude that Plaintiffs have carried their burden to justify a departure from the cost-of-living-adjusted maximum statutory rate.

## IV. CONCLUSION

Accordingly, and having reviewed the briefing of the parties, the supporting declarations and evidence, and the remainder of the record, the Court finds and ORDERS:

---

[6] Similarly, and without identifying a particular market, Mr. Klasko avers that the rates charged by the other attorneys involved ($415, $795, and $940) are effectively "reasonable." Dkt. #46 at ¶¶ 16–17. Mr. Klasko provides no factual basis for familiarity with the other attorneys' work or credentials and supports his conclusions only on the basis that he is a successful immigration attorney.

ORDER – 9

1. Plaintiffs' Application for an Award of Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act (Dkt. #44) is GRANTED IN PART.

2. The Court AWARDS Plaintiffs' uncontested request for $1,338.83 in costs.

3. The Court AWARDS Plaintiffs attorneys' fees in the amount of $28,676.70 (140.40 hours at an hourly rate of $204.25).

4. This matter is now CLOSED.

Dated this 20th day of December 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 10